**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, | |
| *Plaintiff*, | Civil Action No. 19-18495 |
| v. | **OPINION** |
| INNOVATIVE DESIGN AND DEVELOPMENT LLC; E&N CONSTRUCTION, INC.; JOAQUIM FERREIRA, individually; SHAWN RONEY, individually; and ELIO FERREIRA, individually, | |
| *Defendants.* | |

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiff alleges that Defendants failed to properly pay their employees for overtime. Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor (the "Secretary"), brought this action against Defendants, two New Jersey concrete and masonry businesses and their principals, claiming that they engaged in a scheme to deny employees proper overtime compensation and failed to keep adequate time records pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. D.E. 52 ("Am. Compl."). Presently before the Court are three motions for summary judgment. Defendants E&N Construction, Inc. ("E&N") and Elio Ferreira (collectively, the "E&N Defendants") move for summary judgment claiming that the evidence shows that their employees were properly compensated and that Plaintiff has only submitted speculative evidence as to damages. D.E. 102-1. Defendants Innovative Design and Development LLC ("Innovative"), Joaquim Ferreira, and Shawn Roney (collectively, the

"Innovative Defendants") move for summary judgment on largely the same grounds.  D.E. 103-7.

Plaintiff also moves for partial summary judgment as to three different issues: (1) that the

individual Defendants are "employers" under Section 3(d) of the FLSA; (2) that E&N and

Innovative are a "single integrated enterprise"; and (3) that Defendants did not keep daily time

records as required by Section 11 of the FLSA and its accompanying regulations.  D.E. 104-1.

Also pending is Plaintiff's motion for leave to file a sur-reply to the E&N Defendants' motion,

D.E. 116, which the E&N Defendants oppose, D.E. 117.  The Court reviewed the parties'

submissions[1] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b)

and L. Civ. R. 78.1(b).  For the reasons stated below, Plaintiff's motion for leave to file a sur-reply

to the E&N Defendants' motion, D.E .116, is **GRANTED**; the E&N Defendants' motion, D.E.

102, is **DENIED**; the Innovative Defendants' motion, D.E. 103, is **DENIED**; and Plaintiff's

motion, D.E. 104, is **GRANTED in part** and **DENIED in part**.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

E&N and Innovative are in the construction business and employ masonry workers,

concrete workers, foremen, and office workers.  D.E. 88-1 ¶ 2; D.E. 89-1 ¶ 1.  Elio Ferreira is the

Vice President and 49% owner of E&N.  D.E. 88-1 ¶ 1; D.E. 87 ¶ 35.  Shawn Roney is the President

and owner of Innovative.  D.E. 89-1 ¶ 2.  Joaquim Ferreira, Elio Ferreira's father, was a 50% owner

---

[1] The submissions for the E&N Defendants' motion consist of the motion, D.E. 102; Plaintiff's opposition, D.E. 107; the E&N Defendants' reply, D.E. 113; Plaintiff's motion for leave to file a sur-reply and the accompanying brief, D.E. 116; and the E&N Defendants' opposition, D.E. 117. The submissions for the Innovative Defendants' motion consist of the motion, D.E. 103; Plaintiff's opposition, D.E. 108; and the Innovative Defendants' reply, D.E. 115.  The submissions for Plaintiff's motion consist of the motion, D.E. 104; the E&N Defendants' opposition, D.E. 106; the Innovative Defendants' opposition, D.E. 109; and Plaintiff's reply, D.E. 114.

[2] The Court sets forth only those facts necessary for purposes of deciding the present motions.  The facts are drawn from Plaintiff's Amended Complaint, the parties' statements of undisputed material facts, and the responses thereto.

2

of Innovative and "has management and control of Innovative." D.E. 89-1 ¶ 3. On approximately August 21, 2017, Joaquim Ferreira transferred his ownership interest in Innovative to Roney. D.E. 87 ¶ 13; D.E. 96 ¶ 13. Joaquim Ferreira, however, continued to serve as a manager at Innovative after the transfer. D.E. 96 ¶ 16.

Elio Ferreira, part owner of E&N, worked for Innovative for at least 2016-2019 as a controller. D.E. 96 ¶¶ 18-19. He also served as E&N's controller, in addition to other significant managerial duties for that entity. D.E. 96 ¶¶ 36, 182-218. Joaquim Ferreira and Shawn Roney both worked for E&N as supervisors/managers from 2016 to the present. D.E. 96 ¶¶ 41-42. While Plaintiff claims that Joaquim Ferreira and Roney had significant managerial roles with E&N, the Innovative Defendants deny many of Plaintiff's facts on this point. *See* D.E. 96 ¶¶ 58-102 (Roney), 111-81 (Joaquim Ferreira).

Plaintiff alleges that "Defendants have engaged in a scheme to deny their employees proper overtime wages and to conceal their failures to pay overtime." Am. Compl. at 1. Defendants note that they kept records using a payroll company, Liberty Payroll Solutions, which purportedly show that employees were paid for their ordinary hours and for overtime hours. D.E. 89-1 ¶¶ 1-15, 19; D.E. 88-1 ¶¶ 1-8, 11; *see* D.E. 102-6; D.E. 102-7; D.E. 103-5. The parties appear to agree that Defendants did not keep *daily* timekeeping records of employees' start and stop times. D.E. 92-2 ¶¶ 337, 349; D.E. 96 ¶¶ 337, 349. Defendants claim that in addition to overtime pay, they paid employees a "bonus" as a reward for efficiency or productivity, as reflected in the payroll records. D.E. 89-1 ¶¶ 10, 14; D.E. 88-1 ¶¶ 6-7. Plaintiff agrees that the "bonus" payments were made but claims that the payroll records did not accurately record the numbers of overtime hours each employee worked. D.E. 94-1 ¶¶ 13-15; D.E. 93-1 ¶¶ 5-8. According to Plaintiff, employee testimony and confidential interviews show that employees were not paid the proper wages for

3

overtime, and the "bonus" payments were disguised compensation for overtime hours at the employee's ordinary rate of pay.  D.E. 94-1 ¶¶ 15, 19; D.E. 93-1 ¶¶ 8, 11.  For instance, Sergio Rolo, who worked as a foreman for both E&N and Innovative, testified that he regularly worked overtime hours but was not compensated at 1.5 times his hourly rate for such hours.  D.E. 104-22 at 32:8-16, 59:20-60:1.  Eduardo Oliveira, a Department of Labor investigator who interviewed numerous employees of both E&N and Innovative, also states that employees claimed that the "bonus" was compensation for the overtime hours but paid as straight time.  D.E. 107-2.

The Secretary filed his original Complaint on September 27, 2019, D.E. 1, and filed an Amended Complaint on February 25, 2021, D.E. 52.  The Court granted all parties leave to file motions for summary judgment on July 20, 2022.  D.E. 98.  The present motions followed.  D.E. 102 (E&N Defendants), D.E. 103 (Innovative Defendants), D.E. 104 (Plaintiff).

## II.   LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citation omitted) (the court must

"view the facts in the light most favorable to the nonmoving party"). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III.   ANALYSIS

### A.  The E&N Defendants' Motion

The E&N Defendants first argue that it is undisputed that they properly compensated their employees for overtime hours, thus defeating Plaintiff's claim. D.E. 102-1 at 3-4. The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than

forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The E&N Defendants point to weekly payroll records, D.E. 102-6, D.E. 102-7, which they claim "directly disprove Plaintiff's allegations by showing overtime payments (in addition to bonus payments)." D.E. 102-1 at 3; D.E. 102-6; D.E. 102-7. The E&N Defendants further assert that the payroll records demonstrate "that each of the one-hundred-and-twenty-eight (128) employees identified by Plaintiff received compensation at the proper rate under the [FLSA] during the relevant time period." D.E. 102-1 at 4. Plaintiff contests the accuracy of the payroll records, and claims that such records were part of a scheme to conceal the fact that the E&N Defendants did not properly compensate employees for overtime hours. D.E. 93-1 ¶¶ 6-8, 11.

While the payroll records purport to show the number of overtime hours worked by each employee and the rate of pay the employee received, D.E. 102-6, D.E. 102-7, Plaintiff identifies evidence challenging the accuracy of these records and providing a reasonable basis to find that overtime hours were not properly compensated, making summary judgment inappropriate. First, Sergio Rolo, a foreman for both E&N and Innovative, testified that he worked overtime for both companies but that he did not receive 1.5 times his hourly rate of pay for these overtime hours on at least some occasions. D.E. 104-22 at 32:8-16, 59:20-60:1.[3]

Second, the Department of Labor's investigator, Eduardo Oliveira, interviewed E&N and

---

[3] While this version of the transcript was not attached to the Defendants' motions or Plaintiff's oppositions, it was attached to Plaintiff's motion for partial summary judgment and the Court considers it as part of the summary judgment record in deciding Defendants' motions. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Innovative employees and recorded the interviews in writing.  D.E. 107-2 ¶ 3.  Plaintiff relies on redacted versions of the "Employee Personal Interview Statements," which are attached to Oliveira's Declaration, to oppose Defendants' motions.  D.E. 107-2; D.E. 107-3 (E&N employees); D.E. 107-4 (Innovative employees).  The E&N Defendants contest the admissibility of the confidential informant statements, D.E. 113 at 3-6, and the Innovative Defendants join in this argument, D.E. 115.[4]  On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  Defendants argue that the confidential informant statements are hearsay, and that Plaintiff may not rely on the statements because they are redacted pursuant to the Secretary's invocation of the informer's privilege.  D.E. 113 at 3-6.  According to Defendants, Plaintiff's choice "not to reveal the identities of the confidential informants" means that the Secretary "should be banned from using the information."  D.E. 113 at 6.

At the outset, the Court notes that affidavits, declarations, certifications and the like are generally hearsay in that they cannot be admitted at trial (absent party stipulation or a specific Federal Rule of Evidence that permits such use).  Nevertheless, courts may rely on evidence that is capable of being converted into admissible form for trial even if it is not currently in that form. *See Cook v. Babbitt*, 819 F. Supp. 1, 25 (D.D.C. 1993) (citing *Kyriakopoulos v. George Washington Univ.*, 866 F.2d 438, 446 (D.C. Cir. 1989)) ("[I]n judging whether a *non-movant* has

---

[4] Plaintiff filed a motion for leave to file a sur-reply, D.E. 116, which seeks to respond to this argument.  Because Defendants' moving brief did not raise the admissibility of the confidential informant statements, Plaintiff did not have the opportunity to respond to that argument.  And Defendants were aware of Plaintiff's intended reliance on those statements well in advance of the Secretary's opposition brief.  *See* D.E. 93.  Thus, the Court will grant Plaintiff's motion for leave to file a sur-reply and will consider the sur-reply brief, D.E. 116-1, in reaching its decision.  *See Zahl v. Local 641 Teamsters Welfare Fund*, No. 09-1100, 2010 WL 3724520, at *3 (D.N.J. Sept. 14, 2010) ("[A] sur-reply is meant only to address new issues raised by the opposing party for the first time in a reply brief.").

produced enough *to avoid* summary judgment, the Court must consider the evidence they submitted—even if it would be inadmissible at trial in the form submitted—so long as it could be reduced to an admissible form for trial." (emphasis in original)); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (noting that in *Celotex v. Catrett*, 477 U.S. 317, 324 (1986), "the Supreme Court rejected the view that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment"); *Williams v. Borough of West Chester*, 891 F.2d 458, 465 n.12 (3d Cir. 1989) (citation omitted) ("[W]hat is produced at the summary judgment stage must set forth evidence 'as would be admissible' at trial . . . and thus must be 'reduc[ible] to admissible evidence.'").

Here, there appears to be two potential means by which the contents of the Employee Personal Interview Statements could be admissible at trial.  First, Oliveira may be permitted to testify as to the employees' statements pursuant to Fed. R. Evid. 801(d)(2)(D).  The Oliveira Declaration states that the interviews were of current employees and that the statements concerned the employees' hours and wages.  D.E. 107-2.  Thus, the statements are offered against the Defendants and were apparently made by their employees "on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).

Second, the confidential informants themselves could testify as to their personal knowledge.  The informer's privilege allows the government "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."  *Roviaro v. United States*, 353 U.S. 53, 59 (1957) (citation omitted). This privilege applies in the FLSA context.  *Walsh v. MedStaffers LLC*, No. 21-1730, 2021 WL 5505825, at *4 (M.D. Pa. Nov. 24, 2021) (citing *Mitchell v. Roma*, 265 F.2d 633, 635-36 (3d Cir. 1959)); *Chao v. Raceway Petrol. Inc.*, No. 06-3363, 2008 WL 2064354, at *3 (D.N.J. May 14,

8

2008) (citation omitted) (noting that the informer's privilege "is frequently asserted in civil actions brought under the FLSA"). "While there is no fixed rule on when disclosure is appropriate, a court must balance the public interest in protecting the flow of information against a party's right to prepare his defense to determine whether the privilege should be upheld." *Id.* (citing *Rovario*, 353 U.S. at 62). Defendants do not appear to seek *disclosure* at this stage. Rather, they seek to prevent Plaintiff's reliance on the statements in opposition to their summary judgment motions.[5] *See* D.E. 113 at 4-6; D.E. 115.

The parties have not provided the Court with any binding authority indicating that a party may (or may not) rely on a confidential informant statement, which is redacted pursuant to the informer's privilege, in defense of a motion for summary judgment. While some courts have found a party's use of redacted information as a "sword" in seeking affirmative relief problematic, the Secretary does not seek to do so here. For instance, in *Walsh v. MedStaffers LLC*, No. 21-1730, 2021 WL 5505825, at *5 (M.D. Pa. Nov. 24, 2021), the plaintiff relied on the informer's privilege to withhold employee statements from the defendants in their entirety but submitted the statements for *in camera* review in support of his motion for a preliminary injunction. The court refused to consider the employee statements because plaintiff could not "pursue the extraordinary remedy of a preliminary injunction by relying on evidence it refuses to disclose to defendants." *Id.* at *5. Here, Plaintiff only redacts portions of the statements which could identify the individual

---

[5] Defendants claim in conclusory fashion that "Plaintiff has never formally invoked the informant's privilege as it is required to do." D.E. 113 at 5 n.1. But a conclusory statement in a footnote of a reply brief is insufficient to raise such an argument, and the Court finds this argument waived as to the current motion. *See Conroy v. Leone*, 316 F. App'x 140, 144 (3d Cir. 2009) (noting that including "one conclusory sentence" in a brief is insufficient, and that such an "undeveloped argument has been waived"); *Michael G. v. Comm'r of Soc. Sec.*, No. 21-01952, 2022 WL 1744644, at *7 n.2 (D.N.J. May 31, 2022) (finding an issue was waived where "[plaintiff] made a one-sentence, passing reference . . . but did not offer additional argument").

employees while providing Defendants and the Court with the substance of the statements. *See* D.E. 102-6; D.E. 102-7; D.E. 103-5. Moreover, Plaintiff does not rely on the statements in seeking any affirmative relief, but instead uses them in opposition to Defendants' motions. Thus, *MedStaffers* is inapposite.

Defendants also rely on *Martin v. N.Y.C. Transit Auth.*, 148 F.R.D. 56 (E.D.N.Y. 1993). While *Martin* concerned a motion for summary judgment, it misses the mark for the same reason— the court there prevented the plaintiff from using the privileged information "as a sword" in support of its own motion. *Id.* at 64. Moreover, *Martin* considered the Department of Labor's reliance on employee declarations while withholding notes from interviews of those employees. *Id.* at 63-64 ("The DOL's intended use of these witnesses' declarations as a sword waives the DOL's right to shield their prior interview statements from disclosure."). No such tactic has been used here— Plaintiff provided the witness statements with its Oppositions and merely redacted the employees' names and other identifying information. *See* D.E. 107-2, 107-3, 107-4. Thus, *Martin* is also inapposite.

In FLSA cases, Courts "often den[y]" claims by employers to pierce the informer's privilege because such cases "generally revolve[] around a defendant's own documents and records, and because a defendant is free to seek out the very same witnesses in order to interview them, depose them or seek declarations from them." *Perez v. Am. Future Sys.*, No. 12-6171, 2013 WL 5728674, at *4 (E.D. Pa. Oct. 21, 2013) (citation omitted). Moreover, the Court must "balance the public interest in protecting the flow of information against a party's right to prepare his defense to determine whether the privilege should be upheld." *Chao*, 2008 WL 2064354, at *3 (citing *Rovario*, 353 U.S. at 62). As noted, Defendants have not sought the identities of the confidential employees much less presented any basis for the Court to find that the failure to

provide the employees' identifying information has hindered or will hinder their ability to prepare

their defense. *Id.* (denying defendant's request that certain employee statements be disclosed

because "the knowledge sought from [defendant's] current and former employees—whether or not

they worked overtime hours for which they were not compensated—is just as much within the

knowledge of [defendant] as it is within the knowledge of the [defendant's] workers." (internal

quotation marks omitted)).

Moreover, Plaintiff has produced the statements themselves and only redacted information

which may be used to identify the employees.   While the privilege must give way where

"disclosure of the informer's identity is essential to a fair determination of the issues," Defendants

have not presented any basis for such a finding at this stage. *Mitchell*, 265 F.2d at 635-36.  Again,

Defendants have not sought disclosure at all.   Additionally, given that Defendants are aware of the

substance of the employee statements, the Court finds that their need for the redacted information

does not outweigh the purposes of the privilege *at this time. See Perez v. Guardian Roofing LLC*,

No. 15-5623, 2016 WL 1408027, at *3 (W.D. Wash. Apr. 11, 2016) (citation omitted)

("[Defendant] will know the employee informant identities approximately 10 days before trial,

which should be sufficient. . . . [T]he Court cannot find that [defendant's] right to a fundamentally

fair trial is compromised by the delay in releasing employee-informant identities[.]").  Thus, the

Court will consider the employee statements attached to the Oliveira Declaration (D.E. 107-3; D.E.

107-4) for purposes of deciding Defendants' motions.[6]

---

[6] The Court's holding simply allows the Secretary to rely on the Employee Personal Interview
Statements in opposition to Defendants' motions.  The Court notes, however, that in "FLSA cases
involving the government informant privilege," a defendant's "interests in disclosure strengthen[s]
as the case approaches trial." *Walsh v. Elder Resource Mgmt., Inc.*, No. 19-546, 2022 WL 572025,
at *2 (W.D. Pa. Feb. 23, 2022).  Indeed, in his sur-reply, the Secretary acknowledged "that at the
time of trial he must disclose to Defendant[s] any statements of employees that were previously
redacted pursuant to the informant's privilege if the Secretary will rely on those employees as

Several confidential informant employees stated that they "never received time and ½ for my overtime," that overtime is paid as "straight time," and that overtime hours were paid at "the same hourly rate." D.E. 107-2 ¶¶ 6, 8; D.E. 107-3. They further stated that the "bonus" check was in fact payment "for hours over 40 hours per week," but was paid at the employee's ordinary hourly rate. D.E. 107-2 ¶ 6; D.E. 107-3. Rolo's testimony and the Employee Personal Interview Statements are sufficient to create a genuine dispute of material fact as to whether the E&N Defendants properly compensated their employees for overtime hours.[7] *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("[I]f the opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.").

The E&N Defendants also argue that Plaintiff's calculations of the amount of overtime owed "are speculative, cannot be reasonably inferred, and are contradicted by the Payroll Records and testimony that establish the hours worked and amounts paid." D.E. 102-1 at 5. The question at this stage is "whether [Plaintiff has] adduced evidence from which a reasonable fact-finder could find that they have carried their burden of showing the amount and extent of work . . . as a matter

---

witnesses at trial." D.E. 116-1 at 7-8. The Court is *not* ruling at this time how long before trial the information must be disclosed because it has not been asked to do so.

[7] The Court recognizes that there is conflicting deposition testimony as to what the bonuses represented, and whether employees were always compensated at their ordinary hourly rate for overtime. But a defendant "is not entitled to summary judgment on the basis of . . . conflicting deposition testimony," even if the conflict involves a witness contradicting their own statements. *Brunozzi v. Crossmark, Inc.*, No. 13-4585, 2016 WL 112455, at *4 (D.N.J. Jan. 11, 2016). While conflicting testimony may affect weight and credibility, determining "[w]hich portions of [the record] are truthful is a job for the jury and not this Court." *Id.* Construing all reasonable inferences in Plaintiff's favor, as the Court must, there is evidence to support Plaintiff's theory that the bonus structure was illegitimate and that employees were paid for overtime at their ordinary hourly rate.

of just and reasonable inference." *Adami v. Cardo Windows, Inc.*, No. 12-2804, 2015 WL 1471844, at *8 (D.N.J. Mar. 31, 2015); *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir. 1991) (citations omitted) ("When an employer does not have accurate records, the employee need only show that he has in fact performed work for which he was not properly compensated, and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. . . . The testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of FLSA violations.").

The Secretary claims that Rolo's testimony along with the Employee Personal Interview Statements constitute "representative evidence" which proves that the employees "regularly worked overtime hours but were paid at straight time through 'bonus' checks." D.E. 107 at 7. Several employees claim that the "bonus" checks were compensation for overtime hours, rather than compensation for exceptional or efficient work. D.E. 107-2 ¶¶ 6, 8. As to the *amount* of uncompensated work, the Secretary argues that "the amount of overtime hours each employee worked" can be determined "by dividing the amount of the bonus checks by a worker's regular hourly rate of pay" and then "multiplying the number of overtime hours worked by each worker's overtime rate" to calculate the back pay owed to each employee. D.E. 108 at 9-10.

Plaintiff's evidence is sufficient to withstand the E&N Defendants' motion for summary judgment. At this stage, the Court need only determine whether there is a genuine dispute of material fact, and as explained above, the parties both present evidence as to the validity of the payroll records and the "bonus" structure. Drawing all reasonable inferences in Plaintiff's favor, a reasonable factfinder could conclude that the "bonus" structure was a charade, intended to compensate employees for overtime hours at their ordinary rate of pay, and thus a means for the employers to avoid paying 1.5 times the employee's hourly rate as required by law. Further, the

backpay owed to the employees could be calculated by dividing the bonus checks by the employee's ordinary rate of pay.  Thus, a factfinder could reasonably infer the amount and extent of uncompensated work, and Plaintiff's evidence is sufficient to create a genuine dispute of material fact.  While E&N is correct that the employee interviews and testimony is "contradicted by the Payroll Records and testimony that establish the hours worked and amount paid," the Court does not decide which evidence prevails at this stage.  *See Brunozzi v. Crossmark, Inc.*, No. 13-4585, 2016 WL 112455, at *5 (D.N.J. Jan. 11, 2016) ("Despite the evidence appearing to weigh strongly in [the defendant-movant's] favor, [plaintiff's] FLSA overtime claim . . . survives summary judgment."); *see also Big Apple BMW*, 974 F.2d at 1363 ("To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant.").

The E&N Defendants rely on *Adami v. Cardo Windows, Inc.*, No. 12-2804, 2015 WL 1471844 (D.N.J. Mar. 31, 2015), which also considered an FLSA claim on summary judgment.  In *Adami*, the defendant-employer had produced records indicating "the dates of work, the location, and the number and types of windows and doors installed on each job," and plaintiff did not contest the authenticity or reliability of these records.  *Id.* at *9.  The plaintiffs also had not "made any use of this important work data to estimate their hours of work."  *Id.*  The *Adami* court observed that plaintiffs had presented no authority allowing them to "disregard records of actual work performed and rely on their unsupported allegations regarding the number of hours worked, when there are documents in the record which contradict their blanket assertions and from which a meaningful estimate of hours worked and a resulting damages calculation may be made."  *Id.*  The court further noted that "'[w]hile there are cases in which FLSA plaintiffs have defeated summary judgment motions based on their own testimony, those plaintiffs have offered credible

14

testimony approximating the number of hours they worked without pay.'" *Id.* at *10 (quoting *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 119 (S.D.N.Y. 2009)). Ultimately, the court in *Adami* denied summary judgment on condition "that Plaintiffs and their attorney perform the required compilations of estimated hours, and computations of estimated overtime damages." *Id.* at *13.

*Adami* is distinguishable. First, the Secretary has not conceded the authenticity or reliability of the payroll records here, as was the case in *Adami*—indeed, Plaintiff's claims rest on the premise that the payroll records are inaccurate. And unlike the plaintiffs in *Adami*, who ignored unchallenged work records, the Secretary explicitly relies on Defendants' payroll records for their estimation of damages by considering the "bonus" payments and dividing them by the employee's regular hourly rate. Thus, this is a case, as the *Adami* court noted, where the Plaintiff has "offered credible [evidence] approximating the number of uncompensated overtime hours." *Id.* at *10. Plaintiff has presented a reasonable means for determining the "amount and extent of work . . . as a matter of just and reasonable inference." *Id.* at *8. The E&N Defendants' motion is denied.

**B. The Innovative Defendants' Motion**

Like the E&N Defendants, the Innovative Defendants rely on payroll records, *see* D.E 103-5, to claim that it is undisputed that they properly compensated their employees for overtime. This argument is denied for the same reasons noted above as to the E&N Defendants. Plaintiff has put forth evidence in the form of employee testimony and interviews which creates a genuine dispute of material fact as to whether the Innovative Defendants properly compensated their employees for overtime. *See, e.g.*, D.E. 104-22 at 67:18-21 ("Q: Would your overtime checks from Innovative be at the same rate as your hourly rate, your regular 40-hour rate? A: Yes."); D.E. 107-2 ¶ 8 ("The overtime they pay as bonus. . . . The 'bonus'/overtime is paid as straight time."); D.E. 107-4.

The Innovative Defendants also note that Roney and Joaquim Ferreira testified as to "the exactitude with which union contractors maintained a strict 8 hour work day closely monitored by the on-site shop steward and the difficulty that came with getting overtime approved[.]" D.E. 103-7 at 7.  As such, they argue that "[a]pproval for overtime work did not come easy and was in fact rarely utilized," *id.* at 8, and that Innovative, as a union contractor, "simply could not hide or mask overtime hours worked without the same being uncovered" by the union, D.E. 115 at 2.  Such evidence may affect the weight ultimately given to Plaintiff's version but does not conclusively demonstrate that the Innovative Defendants properly compensated their employees for overtime. *See Marino*, 358 F.3d at 247 (quoting *Anderson*, 477 U.S. at 255) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'").

The Innovative Defendants, like the E&N Defendants, claim that Plaintiff's evidence as to the amount and extent of uncompensated overtime is too speculative or vague to create a dispute of material fact.  D.E. 103-7 at 9-14.  For the reasons noted above, the Court disagrees.  The Innovative Defendants' motion is denied.

### C.  Plaintiff's Motion

The Secretary moves for partial summary judgment on three issues: (1) that the individual Defendants are "employers" under Section 3(d) of the FLSA, (2) that E&N and Innovative are a "single integrated enterprise, and (3) that the Defendants failed to maintain daily timekeeping records as required by Section 11 of the FLSA.  D.E. 104.  The Court addresses each in turn.

### A. Whether the Individual Defendants are "Employers" under FLSA § 3(d)

Plaintiff seeks partial summary judgment on whether Elio Ferreira is an "employer" of *E&N's* employees under FLSA Section 3(d).[8]  In their opposition, the E&N Defendants indicate that they "do not oppose Plaintiff's argument that Elio Ferreira is an 'employer' of E&N Construction Inc. under Section 3(d) of the FLSA."  D.E. 106 at 2 n.1.  Thus, summary judgment is granted on this point.

Plaintiff also seeks partial summary judgment on whether Shawn Roney and Joaquim Ferreira are "employers" of *both* Innovative and E&N's employees.  *See* D.E. 104-1 at 8.  The Innovative Defendants admit that Roney and Joaquim Ferreira are "employers" of *Innovative's* employees pursuant to Section 3(d).  D.E. 97-1 ¶¶ 52, 103.  Thus, summary judgment is granted on this point.  The Innovative Defendants argue, however, that there is a genuine dispute of material fact as to whether Roney and Joaquim Ferreira are "employers" of *E&N's* employees. The Court agrees.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]"  29 U.S.C. § 203(d).  The Third Circuit has noted that "the FLSA defines employer 'expansively' and with 'striking breadth.'"  *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467 (3d Cir. 2012) (internal citations omitted). Indeed, "[t]he Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'"  *Id.* at 467-68 (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)).  "Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute

---

[8] Plaintiff does not seek summary judgment on whether Elio Ferreira is an "employer" of *Innovative's* employees.

'joint employers' for purposes of liability under the FLSA." *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014). "When determining whether an individual is an employer under the FLSA, courts must look at the economic realities of the case rather than any 'technical concepts.'" *Farkas v. Garlatti*, No. 17-13673, 2018 WL 3630124, at *2 (D.N.J. July 31, 2018) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)); s*ee also DeCamillis v. Educ. Info. & Res. Ctr.*, No. 18-11576, 2019 WL 3521959, at *4 (D.N.J. Aug. 2, 2019); *Thompson*, 748 F.3d at 148 (quoting *In re Enter. Rent-A-Car*, 683 F.3d at 469). In making this determination, courts consider the following non-exhaustive factors:

> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Thompson*, 748 F.3d at 149; *see also Haybarger v Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 418 (3d Cir. 2012) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). The Court is not "confined to 'narrow legalistic definitions' and must instead consider all the relevant evidence, including evidence that does not fall neatly within one of the above factors." *In re Enter. Rent-A-Car*, 683 F.3d at 469.

According to Plaintiff, "Defendants admit that both Roney and Joaquim had the authority to make hiring and firing decisions on behalf of both entities and were the main two people that hired and fired employees." D.E. 104-1 at 9. In Roney's deposition, he testified that he "was not involved in any hiring or firing or any of them decisions for E&N." D.E. 104-5 at 101:14-20. As to Joaquim Ferreira, the Innovative Defendants agree that he "had authority to hire employees for E&N," D.E. 96 ¶ 149, and Joaquim Ferreira testified that he would "more or less" "tell [Elio

18

Ferreira] when guys should be laid off or fired" and that Elio Ferreira would listen to him.  D.E. 104-4 at 65:2-7.

As to Roney and Joaquim Ferreira's ability to set conditions of employment for E&N, Plaintiff cites extensively to portions of its Statement of Undisputed Material Facts which concern Roney and Joaquim Ferreira's work for *Innovative*, and the Innovative Defendants deny most of Plaintiff's facts concerning their involvement with E&N.  D.E. 104-1 at 9 (citing D.E. 87 ¶¶ 54, 55.e, 55.g, 105, 106.b, 106.d).  Roney testified that, as to E&N, he "did not manage the men," and that he did not control "what the guys actually did."  D.E. 109-2 Ex. B at 125:1-14.  Roney also stated that he had "no clue" how E&N determined the pay rate for its workers, *id.* at 125:18-25, and that he "did not have privilege to any payroll records or anything else like that," D.E. 104-5 at 50:20-24.  Joaquim Ferreira testified that "all [he] can do" for E&N is "supervise the workers" and that he is "not the boss of the workers."  D.E. 109-2 Ex. D at 202:16-21.

While Plaintiff has presented substantial evidence indicating that Roney and Joaquim Ferreira may be "employers" of E&N's employees, the Innovative Defendants have presented evidence which creates a genuine dispute of material fact on this point.  *See Big Apple BMW, Inc.*, 974 F.2d at 1363 ("[I]f the opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent."); *see also Kirsch v. Plovidba*, 971 F.2d 1026, 1030 (3d Cir. 1992) (noting that "fact-intensive" inquiries are often "inappropriate to decide on summary judgment"); *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985) (same); *Rong Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 WL 113539, at *3 (D.N.J. Jan 12, 2012) ("Because of the fact-intensive nature of the inquiry, an employer determination can rarely be made on summary judgment.").

### B. Whether E&N and Innovative are a Single Integrated Enterprise

Plaintiff also seeks partial summary judgment on the issue of whether E&N and Innovative are a "single integrated enterprise" for purposes of FLSA liability.  D.E. 104-1 at 13.  "[T]he 'integrated enterprise' test for the presence of a single employer [is] a sort of labor-specific veil-piercing test" which potentially allows two entities to be treated as a single "employer."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).  In determining whether the entities are a "single integrated enterprise," the court considers "four labor-related characteristics of affiliated corporations: interrelation of operations; common management; centralized control of labor relations; and common ownership or financial control."  *Id.* at 486.  "No single factor is dispositive; rather, single employer status under this test 'ultimately depends on all the circumstances of the case.'"  *Id.* (quoting *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)).  "[T]he application of [the *Pearson*] factors is a 'factual' question rather than a 'legal' one."  *Id.* at 496-97.

"The Third Circuit has yet to itself apply its *Pearson* analysis in the context of an FLSA claim, but several district courts in this circuit have done so."  *Lambert v. Jariwala & Co., LLC*, No. 18-17295, 2023 WL 1883354, at *10 (D.N.J. Feb 10, 2023) (citations omitted); *see also Goh v. Nori O Inc.*, No. 16-02811, 2020 WL 7640518, at *9 (D.N.J. Dec. 23, 2020) ("*Pearson* arose under the WARN Act, . . . not the FLSA, and as the parties agree, 'there is no Third Circuit precedent explicitly speaking to the issue of whether the single enterprise test can be used to impose liability in an FLSA overtime case.'").

Assuming, without deciding, that the *Pearson* factors apply in the context of an FLSA overtime claim, there is a genuine dispute of material fact as to whether E&N and Innovative are a single integrated enterprise.  Plaintiff presents substantial evidence of integration between E&N

and Innovative, but substantial evidence alone does not entitle a party to summary judgment. Where the non-movant presents more than a "mere scintilla" of evidence in its favor, the Court must view the evidence in the light most favorable to the non-moving party and "cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent." *See Big Apple BMW, Inc.*, 974 F.2d at 1363.

Plaintiff concedes that E&N and Innovative did not have common owners. D.E. 114 at 7-8 ("[T]he Secretary does not argue Joaquim and Elio both owned Innovative and E&N in the traditional sense."); *see also* D.E. 106-5 at 16:24-17:4 (Elio Ferreira testifying that he and Neil Kokel own E&N); D.E. 106-3 at 25:12-25 (Roney testifying that he and Joaquim Ferreira were the only owners of Innovative, and Joaquim Ferreira sold his ownership stake to Roney). Additionally, while Plaintiff claims that Joaquim and Elio Ferreira, as father and son, "together . . . enjoyed financial control of both entities," D.E. 114 at 8, the evidence is not so clear. Plaintiff notes that Elio "exercised financial control over Innovative because Innovative was heavily reliant on E&N for income," D.E. 104-1 at 19, and that Joaquim "exercised financial control over E&N through his ownership of non-party businesses that supplied millions of dollars of labor and equipment to E&N," and because "E&N relied heavily on Innovative for labor," *id.* at 21. But the fact that E&N and Innovative regularly engaged in business with one another, or even that they were economically dependent on one another, does not demonstrate that the owners of each entity exercised financial control over the other. Plaintiff also points out that Joaquim Ferreira "personally provided tens of thousands of dollars to E&N and did not require the money to be repaid." *Id.* While Joaquim did make a $25,000 payment to E&N, he testified that he was giving such money to E&N merely to help his son, Elio, cover expenses, and there is no indication in the record that this money gave Joaquim any kind of control over E&N. D.E. 96 ¶¶ 322-23.

21

While Joaquim Ferreira, Elio Ferreira, and Shawn Roney all had roles for both E&N and Innovative, their roles for each company were distinct.  For instance, Roney testified that he only acted as a field manager for E&N, and that he knew "absolutely zero" about E&N's operations otherwise.  D.E. 106-3 at 33:2-16.  Joaquim Ferreira testified similarly that as to E&N, "all [he] can do" is "supervise the workers" and that he is "not the boss of the workers."  D.E. 106-4 at 202:2-21.  While Elio Ferreira acted as a controller for both entities, D.E. 92-2 ¶ 295, the evidence only shows that he exercised significant managerial control in his role at E&N.  *See* D.E. 106-2 at ¶¶ 1-2, 8-11, 35-38, 51, 53, 56-57.

Defendants' evidence creates a dispute of material fact as to whether E&N and Innovative may be treated as a "single integrated enterprise."  Thus, summary judgment is denied on this point.  *See Marino*, 358 F.3d at 247 (quoting *Anderson*, 477 U.S. at 255) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"); *see also Kirsch*, 971 F.2d at 1030 (3d Cir. 1992) (noting that "fact-intensive" inquiries are often "inappropriate to decide on summary judgment").

### C.  Whether Defendants Failed to Maintain Daily Timekeeping Records

Finally, Plaintiff claims that there is no genuine dispute of material fact that Defendants "failed to maintain daily timekeeping records, thereby violating Section 11 of the [FLSA]."  D.E. 104-1 at 1.  The FLSA "requires employers to maintain accurate records to ensure that all workers" are appropriately paid.  *Williams v. Tri-Cnty. Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984) (citation omitted).  The FLSA's implementing regulations require employers to "maintain and preserve payroll or other records containing . . . [h]ours worked each workday and total hours for

each workweek[.]"  29 C.F.R. § 516.2(a)(7); *see also* 29 C.F.R. § 516.6(a)(1) (requiring employers

to preserve records containing "the daily starting and stopping time of individual employees").

Defendants claim that summary judgment is not warranted because they "have produced

*weekly* payroll records."  D.E. 109 at 12 (emphasis added); D.E. 106 at 6 (emphasis added).  The

E&N Defendants agreed in their response to Plaintiff's statement of undisputed material facts that

"Defendant E&N Construction Inc. did not produce during discovery in this matter timekeeping

records showing employees' daily starting and stopping times for all work weeks despite the

Secretary's request for all 'timekeeping records.'"  D.E. 92-2 ¶ 349; *see also id.* ¶ 337.  In

responding to Plaintiff's statement of undisputed material facts, the Innovative Defendants' failed

to address Plaintiff's statement that "Defendant Innovative, Joaquim, and Roney did not produce

during discovery in this matter timekeeping records showing employees' starting and stopping

times[.]"  D.E. 96 ¶ 337, *see also id.* ¶ 349.  Thus, the Court deems Plaintiff's statement as admitted

to by the Innovative Defendants.  *See* Fed. R. Civ. P. 56(e) ("If a party fails . . . to properly address

another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of

the motion[.]").  Defendants point only to *weekly* timekeeping records.  However, the FLSA

specifically requires employers to record "hours worked each workday" including employees'

"daily starting and stopping times."  29 C.F.R. § 516.2(a)(7); 29 C.F.R. § 516.6(a)(1).  Because

Defendants present no evidence to the contrary, there is no dispute of material fact that they

violated Section 11 of the FLSA.  Thus, the Secretary is granted partial summary judgment on this

issue.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for leave to file a sur-reply, D.E. 116, is

**GRANTED**; the E&N Defendants' motion for summary judgment, D.E. 102, is **DENIED**; the

Innovative Defendants' motion for summary judgment, D.E. 103, is **DENIED**; and Plaintiff's motion for partial summary judgment, D.E. 104, is **GRANTED in part** and **DENIED in part**. An appropriate Order accompanies this Opinion.

Dated: March 8, 2023

_____
John Michael Vazquez, U.S.D.J.